USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/28/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MERSEN USA EP CORP.,

                              Plaintiff,

            -against-

TDK ELECTRONICS INC and TDK (ZHUHAI
FTZ) CO., LTD.,

                              Defendants.

---

1:21-cv-00763 (MKV)

**ORDER GRANTING IN PART**
**MOTION TO DISMISS**

MARY KAY VYSKOCIL, United States District Judge:

This case comes before the Court on a Motion to Dismiss [ECF No. 44] filed by

Defendants TDK Electronics Inc. ("TDK Electronics") and TDK (Zhuhai FTZ) Co., Ltd.

("Zhuhai FTZ").  Plaintiff Mersen USA EP Corp. ("Mersen") alleges that the Defendants

breached a non-disclosure agreement between the Parties, and have otherwise unfairly competed

or been unjustly enriched following that breach.  Zhuhai FTZ moves to dismiss on the grounds

that it is not subject to personal jurisdiction.  TDK Electronics, and Zhuhai FTZ, also move to

dismiss for failure to state a claim.  For the reasons stated herein, the Court grants in part the

Motion to Dismiss.

**FACTUAL BACKGROUND**

The following facts are taken from the Amended Complaint[1] and are accepted as true and

construe in the light most favorable to the Plaintiff, Mersen, on this motion.  *See Ashcroft v.*

---

[1] Plaintiff's Amended Complaint [ECF No. 39] is filed under seal because it purportedly contains confidential and proprietary trade information that is the subject of the litigation between these Parties.  [ECF No. 41] (order granting seal).  Plaintiff has publicly filed a minimally redacted version of its Amended Complaint.  [ECF No. 40].  Because certain of the confidential information is dispositive to resolution of this Motion, the Court refers to the Amended Complaint currently filed under seal throughout this opinion.

*Iqbal*, 556 U.S. 662, 678 (2009) ("[F]or the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true.").

A.        **The Parties and the Competing Products**

Mersen is a "global expert in electrical power and advanced materials."  Am. Compl. ¶ 37.  Products produced at Mersen allow clients to "optimize their manufacturing performance" in a variety of fields, including "energy [and] electronics."  Am. Compl. ¶ 37. Relevant here, Mersen "makes specific components suitable for high power applications" for integration in "power surge device applications."  Am. Compl. ¶ 39.  One of the products Mersen sells is a "unique thermally protected metal oxide varistors" ("TPMOV").  Am. Compl. ¶ 2. TPMOVs work as "overvoltage protection components[s] in power supply circuits in a variety of devices and applications."  Am. Compl. ¶ 2.

Mersen's TPMOV products "are industry leading and include a design that has best in class performance compared to its competitors," thanks to "the development of confidential information and years of significant labor and investment."  Am. Compl. ¶¶ 44, 45.  Two confidential aspects of Mersen's TPMOV design distinguishes it from competitors.  Am. Compl. ¶¶ 69-70.  For example, when "an overvoltage" event is detected, a system "causes the solder to melt, thereby releasing [an] arm, which in turn allows springs to isolate" other key components "with an arc shield."  Am. Compl. ¶ 70.  While aspects of that system (the "Disconnection Elements") are "publicly available," the "solder type and solder temperature are confidential and not publicly available."  Am. Compl. ¶ 70.

Defendant TDK Electronics (formerly known as EPCOS, Inc) is a Delaware corporation with a principal place of business in New Jersey.  Am. Compl. ¶ 32.  TDK Electronics "sells electronic components in the United States," but cannot manufacture its own.  Am. Compl. ¶¶ 33-34.  TDK Electronics therefore engages Defendant Zhuhai FTZ, "an affiliate" located in

China, to manufacture the components.  Am. Compl. ¶¶ 35-36.  Recently, TDK Electronics has

started to sell a "TPMOV product designated as the MT30," which is manufactured by Zhuhai

FTZ.  Am. Compl. ¶¶ 34, 36.  The MT30 competes directly with Mersen's TPMOV products.

*See* Am. Compl. ¶ 118.

**B.** **Plaintiff Experiences Issues with Components Manufactured and Sold by Defendants**

Mersen's TPMOVs "incorporate a metal oxide varistor [] component," ("MOV"),

manufactured by Defendant Zhuhai FTZ and sold by Defendant TDK Electronics.  Am.

Compl. ¶ 3.  The TPMOVs "eliminate[] common destructive failure modes associated with

standard MOVs," including "thermal failure, *i.e.* fire."  Am. Compl. ¶ 40.

In July 2016, Mersen learned that a customer of its TPMOV products "experienced a

catastrophic failure," Am. Compl. ¶ 4, when the TPMOV "caught on fire and destroyed the surge

protection device" which it was incorporated into.  Am. Compl. ¶ 76.  Following testing, Mersen

determined that a defective MOV was the cause of the failure.  Am. Compl. ¶ 78.  The MOV

component of the TPMOV was sold by TDK Electronics and manufactured by Zhuhai FTZ.

Am. Compl. ¶¶ 5, 78, 80.  A month after the fire, Mersen, TDK Electronics, and Zhuhai FTZ

held a meeting during which Zhuhai FTZ "shared information relating to its processes for testing

its MOV products." Am. Compl. ¶ 84.  Following that meeting, "TDK Electronics requested that

samples" of the TPMOVs "be sent back to Epcos," a TDK Electronics predecessor,[2] "for

evaluation."  Am. Compl. ¶¶ 32 ,85.  After receiving the samples, TDK Electronics informed

Mersen that "its 'factory'"[3] could not resolve the problems without more information, such as

---

[2] Mersen alleges that "Epcos," as used by TDK Electronics in this context, "was referring" to Zhuhai.  Am. Compl. ¶ 86.

[3] Mersen alleges that when TDK Electronics referred to its "factory," it was referring to Zhuhai, and their communications therefore "suggested that TDK Electronics and [Zhuhai] were the same entity."  Am. Compl. ¶¶ 86.

"how Mersen was using [] the MOV products," and "details about the design of Mersen's TPMOV."  Am. Compl. ¶¶ 5, 87.

**C.        The Non-Disclosure Agreement**

Before exchanging confidential information, Mersen requested a non-disclosure agreement (the "NDA") under which Mersen would "provide the factory in China[,] through TDK Electronics (at that time EPCOS), with confidential information" to resolve the manufacturing issues.  Am. Compl. ¶¶ 88-89.

Mersen's proposed draft of the NDA "left blank the name of the TDK corporate entity that would be a party to the agreement."  Am. Compl. ¶ 89.  Mersen asserts that at "the time the NDA was executed, Mersen did not understand the corporate distinction" between TDK Electronics and Zhuhai FTZ, and so "relied on Defendants to identify the correct entity to sign the NDA."  Am. Compl. ¶¶ 7, 88.  TDK Electronics representatives informed Mersen that "the proper entity to name relative to information requested by the factory was 'EPCOS, Inc.'"  Am. Compl. ¶ 89.  The final NDA[4] was signed on behalf of Mersen USA Newburyport-MA, LLC (Mersen's predecessor) and EPCOS (TDK Electronics' predecessor).  Am. Compl. ¶ 90; NDA

---

[4] "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 110-11 (2d Cir. 2010).  The court may also consider documents "integral" to the complaint, however, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."  *Id.*  On a motion pursuant to Rule 12(b)(2), courts may also rely upon materials that are outside the pleadings.  *See DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001).

Plaintiff's Amended Complaint directly references, and quotes extensively from, a December 1, 2016 NDA.  *See, e.g.*, Am. Compl. at 14, 20.  That NDA was attached as an exhibit to Plaintiff's original complaint.  [ECF No. 1-1 at 22-26] (the "NDA").  Relying on a forum selection clause contained in that NDA, Plaintiff alleges that the Court has personal jurisdiction over the Defendants and that venue is proper here.  Am. Compl. ¶¶ 11, 27, 30.  Defendants also rely on provisions of the NDA in their briefing, and do not dispute its accuracy.  *See* Defs. Mem. at 1 n.2 (referring to Exhibit A of the original complaint as the NDA).  The Court therefore concludes that the NDA is incorporated by reference and integral to the Amended Complaint, and considers it on this motion.

at 1.  Nonetheless, Mersen contends that Zhuhai FTZ "was aware of, assented to, and understood that it was bound by the NDA" signed by EPCOS.  Am. Compl. ¶¶ 8, 21, 93.

The NDA provides that the "Parties intend [to] enter into [a] relationship for resolving quality issues, [and] improvements in the design of custom made MOVs for Mersen."  NDA § 1.  The NDA continues that, to resolve the issues with the TPMOVs, EPCOS, Inc. "commits to make use of the confidential information solely for the following Authorized Purpose: Design, Manufacture, and improvements of MOVs supplied to Mersen."  *Id.*  The NDA also describes the "permitted use" of Mersen's confidential information, which obligated EPCOS, Inc. to "protect any [confidential information] from any unauthorized disclosure" with the care it takes to protect its own information.  NDA § 3.1.  To that end, the NDA prohibited EPCOS, Inc. from "disclos[ing] or leak[ing] [Mersen's] Confidential Information, in whole or in part, to any third party (excluding Affiliates) without Mersen's prior written approval."  NDA § 3.2.  "Affiliates," in the NDA, is defined as "any corporation or other entity that directly or indirectly controls, is controlled by, or is under Common Control with [EPCOS, Inc.], where 'control' means the direct or indirect ownership of 50% of the outstanding shares or voting rights of an entity to elect directors."  *Id.*

The NDA also included a "Governing law and jurisdiction" provision that stated "the Parties agree that all disputes, action, claim, controversies which may arise between the Parties out of or in connection with the interpretation or performance of this Agreement shall be exclusively submitted to the United States District Court for the Southern District of New York."  NDA § 11.  That section also provided that the NDA "shall be governed by and construed in accordance with the laws of the state of New York, excluding all conflict of law provisions."  NDA § 11.

**D.      *Mersen Begins to Disclose Confidential Information***

After the NDA was signed, Mersen began sending the Defendants its confidential

information "in writing, telephonically and in person."  Am. Compl. ¶ 8.  Three days after the

NDA was signed, Mersen met with representatives of TDK Electronics and Zhuhai FTZ at the

Mersen facility in Massachusetts.  Am. Compl. ¶ 94.  The agenda circulated before the meeting

included a "TDK heading and references to" Zhuhai FTZ, and included a request from Zhuhai

FTZ that Mersen "make a presentation detailing Mersen's entire TPMOV design."  Am. Compl.

¶¶ 95-96.

When Zhuhai FTZ and TDK Electronics representatives arrived at Mersen's facility,

"they indicated the identical corporate affiliation as representatives of TDK Electronics (then

EPCOS)" when signing in.  Am. Compl. ¶ 97.  Before the meeting began, a Mersen

representative "confirmed that all disclosures made at the meeting and afterward would be

covered by the NDA."  Am. Compl. ¶ 98.

A few days after the meeting in early December, TDK Electronics circulated meeting

minutes which "referred to it and [Zhuhai FTZ] as a single company."  Am. Compl. ¶ 99.  In

those same minutes, "TDK Electronics requested, on behalf of [Zhuhai FTZ] and at [their]

request, that Mersen provide [Zhuhai FTZ] with additional Confidential Technical Information,"

and requested weekly calls with Zhuhai to provide said information.  Am. Compl. ¶¶ 100-101.

Towards the end of December, at one of the weekly conferences, Zhuhai FTZ "circulated a

PowerPoint presentation concerning the meeting marked 'strictly confidential'" and "sought

confidential information from Mersen regarding its testing protocols."  Am. Compl. ¶ 102.

Similar meetings occurred between Zhuhai FTZ and Mersen a few weeks later, in January 2017.

Am. Compl. ¶ 102-04.

Following those meetings Zhuhai FTZ "invited Mersen to travel to Zhuhai China to continue discussions concerning the confidential features of Mersen's TPMOV design," Am. Compl. ¶ 105, and Mersen representatives did ultimately visit the Zhuhai FTZ facility in China. Am. Compl. ¶ 107.

The visit to China did not alleviate Mersen's concerns that Zhuhai FTZ "was failing to appreciate" certain aspects of the TPMOV design. Am. Compl. ¶¶ 108. "[P]ursuant to the NDA" Mersen therefore decided to disclose further confidential details regarding the TPMOV design. Am. Compl. ¶ 108. Those disclosures included confidential information regarding Mersen's "forecasts, launch dates and target MOV pricing [for its] 25mm Business Plan," to "avoid the same problem in future products." Am. Compl. ¶¶ 109-10. In particular, Mersen revealed to Zhuhai FTZ "highly sensitive information" on a wide variety of projects and product uses, "key markets [and] key customers by name," and "how Mersen was collaborating with customers to set customer product specifications," including at least one customer in particular. Am. Compl. ¶¶ 110-11.

Following the problems with the TDK Electronics and Zhuhai TFK component issues, "including unexplained delays at TDK Electronics and [Zhuhai FTZ]," the Parties' relationship began to deteriorate. Am. Compl. ¶ 113. In July 2017, TDK Electronics approached Mersen and "demanded" it sign a contract under which TDK Electronics would sell Mersen's 25mm MOV. Am. Compl. ¶¶ 112-13. Mersen declined to select TDK Electronics as its vendor for that product. *Id.*

## E.    *Defendants Allegedly Begin to Use Confidential Mersen Information*

Three years later, Mersen announced its "25mm TPMOV family of products." Am. Compl. ¶ 114. A few months later, TDK Electronics debuted its new "MT30" series of products. Am. Compl. ¶ 115. The MT30 is also a TPMOV product. Am. Compl. ¶¶ 35, 115. Zhuhai FTZ

manufactures the electrical components for the MT30 product.  Am. Compl. ¶ 36.  The MT30, from Plaintiff's perspective, "represents a substantial enhancement over the prior TPMOV products" the Defendants manufactured and sold.  Am. Compl. ¶ 121.  Before offering the MT30, TDK Electronics notified Mersen that it "would be competing against Mersen for 25mm TPMOV business."  Am. Compl. ¶ 126.  Mersen expressed that it was "concern[ed]," and that "it appeared such products were based on Mersen's confidential information."  Am. Compl. ¶ 127. TDK Electronics allegedly responded that "if Mersen wished to protect its confidential information, it should have requested TDK execute a non-disclosure agreement," which Mersen believes is "tantamount to an admission that TDK breached the NDA."  Am. Compl. ¶¶ 128-29.

Mersen alleges that the MT30 takes advantage of the disclosed confidential information, Am. Compl. ¶ 116, side-stepping the "time and expense" needed for the Defendants to develop their own product.  Am. Compl. ¶¶ 117-18.  Specifically, Mersen alleges that without its confidential information, "Defendants could not have had a market-ready 25mm TPMOV capable of effectively competing with Mersen's 25mm TPMOV" by the time it was placed on the market.  Am. Compl. ¶ 124.  As a result of this purported misappropriation, Mersen believes the Defendants are attempting to displace Mersen at one customer specifically identified to Defendants pursuant to the NDA while the two sides were working together to address the issues Plaintiff was experiencing.  Am. Compl. ¶ 119.  To combat this, Mersen has "given customers price discounts that exceed $1,000,000," and the "business opportunities that Defendants plan to take from Mersen with the MT30 exceed $1,000,000."  Am. Compl. ¶¶ 130-131.

## PROCEDURAL HISTORY

Plaintiff initially filed its complaint in the Supreme Court of the State of New York, New York County.  [ECF No. 1].  Defendants then timely removed the case to the United States District Court for the Southern District of New York on the basis of diversity jurisdiction.  *Id.*

The removed complaint asserted breach of contract and unfair competition claims against TDK Electronics, and an unjust enrichment claim against Zhuhai FTZ and TDK (Zhuhai) Co., Ltd. *Id.* A few weeks after the complaint was removed here, Plaintiff voluntarily dismissed TDK (Zhuhai) Co., Ltd. without prejudice. [ECF Nos. 9, 14].

Thereafter, remaining Defendants TDK Electronics and Zhuhai FTZ requested a pre-motion conference on a contemplated motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and (b)(6). [ECF No. 21]. Plaintiff opposed, and, with respect to Defendants' suggestion the Court does not have personal jurisdiction over Zhuhai FTZ, requested jurisdictional discovery. [ECF No. 22]. During a conference with the Parties, the Court granted leave to file a motion to dismiss, and denied Plaintiff's request for jurisdictional discovery. [ECF No. 28]. Pursuant to the scheduling order set at the conference, Defendants filed a motion to dismiss pursuant to Rules 12(b)(2) and (b)(6). [ECF No. 29]. In response to that motion, and as permitted by the Court's Individual Rules of Practice in Civil Cases, Plaintiff elected to amend its complaint. [ECF No. 35].

After the Amended Complaint [ECF No. 39] was filed, Defendants renewed their request for leave to move to dismiss. [ECF No. 42]. The Court granted Defendants' request and set a briefing schedule. [ECF No. 43]. Pursuant to that schedule, Defendants filed a redacted memorandum [ECF No. 48] and a redacted declaration [ECF No. 49] by Hardy Chen in support of the motion, and a declaration by Adam Lurie in support of the motion [ECF No. 50]. Thereafter, Plaintiffs filed a redacted opposition [ECF No. 54], two redacted declarations in opposition (one by Roy Ball [ECF Nos. 57], and one by Thomas Bejin [ECF Nos. 59]) and a

declaration in opposition by Gabriel Ledru [ECF No. 55].  Defendants then filed a redacted reply

[ECF No. 63], and a further declaration in support by Adam Lurie [ECF No. 64].[5]

## LEGAL STANDARDS

### I.      FEDERAL RULE OF CIVIL PROCEDURE 12(B)(2)

Defendant Zhuhai FTZ moves pursuant to Federal Rule of Civil Procedure 12(b)(2) to

dismiss Plaintiff's Amended Complaint for lack of personal jurisdiction.  "On a Rule 12(b)(2)

motion, plaintiff carries the burden of demonstrating that jurisdiction exists, and where the

district court did not conduct a full-blown evidentiary hearing on a motion, the plaintiff need

make only a *prima facie* showing of jurisdiction."  *Penachio v. Benedict*, 461 F. App'x 4, 5 (2d

Cir. 2012).  At the pleading stage, a plaintiff may make a *prima facie* showing by relying on its

pleadings and affidavits, and a showing of personal jurisdiction may be established solely by

allegations.  *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84-85 (2d Cir. 2013).

However, to adequately allege personal jurisdiction, a plaintiff "must include an averment of

facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the

defendant."  *Id.* at 85.  And while the Court "construe[s] the pleadings and affidavits in the light

most favorable to plaintiffs," *id.*, the Court cannot "draw argumentative inferences in the

plaintiff's favor" and need not "accept as true a legal conclusion couched as a factual allegation."

*O'Neill v. Asat Trust Reg.*, 714 F.3d 659, 673 (2d Cir. 2013).  If the Court lacks personal

jurisdiction over a defendant, the claims against that defendant must be dismissed.

---

[5] The Parties have also filed unredacted memorandum and declarations under seal.  [ECF No. 46] ("Defs. Mem."); [ECF No. 47] ("Chen Decl."); [ECF No. 53] ("Pl. Opp."); [ECF No. 56] ("Ball Decl."); [ECF No. 58] ("Bejin Decl."); [ECF No. 62] ("Reply").

## II.      FEDERAL RULE OF CIVIL PROCUEDRE 12(B)(6)

Defendants TDK Electronics and Zhuhai FTZ also move pursuant to Federal Rule of

Civil Procedure 12(b)(6) to dismiss Plaintiff's Amended Complaint for failure to state a claim

upon which relief can be granted.  On this motion, the Court must "accept as true all factual

statements alleged in the complaint and draw all reasonable inferences in favor of the non-

moving party." *McCarthy*, 482 F.3d at 191.  On a Rule 12(b)(6) motion, the issue is not whether

the plaintiff will ultimately prevail, but whether his claim, as pleaded, is sufficient to afford him

the opportunity to proceed on the evidence.  *See Chance v. Armstrong*, 143 F.3d 698, 701 (2d

Cir. 1998).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain

sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal*, 556 U.S. at 678.  While the "plausibility standard" articulated in *Iqbal* "is not

akin to a 'probability requirement," it "asks for more than a sheer possibility that a defendant has

acted unlawfully." *Id.*  Thus, "[w]here a complaint pleads facts that are 'merely consistent with'

a defendant's liability, it 'stops short of the line between possibility and plausibility of

entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).  Further, "[t]hreadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

At bottom, Plaintiff must "nudg[e] [his] claim[] across the line from conceivable to plausible."

*Twombly*, 550 U.S. at 569.  Otherwise, the complaint must be dismissed. *Id.*

**DISCUSSION**

Plaintiff brings four claims in its Amended Complaint: 1) a claim against TDK

Electronics for breach of the NDA, Am. Compl. at 21 ("Count One"); 2) a claim against Zhuhai

FTZ for breach of the NDA, Am. Compl. at 22 ("Count Two"); 3) a claim against TDK

Electronics and Zhuhai FTZ for unfair competition, Am. Compl. at 24 ("Count Three"); and 4) a

claim for unjust enrichment *solely* against Zhuhai FTZ, pleaded in the alternative to the breach of

NDA claim, Am. Compl. at 25 ("Count Four").

Defendant Zhuhai FTZ contends that it is not subject to personal jurisdiction in New

York.  Defs. Mem. at 20-25; Reply at 8-10.  Because personal jurisdiction is a threshold issue,

the Court will first determine whether Zhuhai FTZ has consented to personal jurisdiction, or

whether the exercise of personal jurisdiction over Zhuhai FTZ comports with the Constitutional

requirements of due process, before addressing Plaintiff's substantive claims.  *See Basile v. Walt

Disney Co.*, 717 F. Supp. 2d 381, 385 (S.D.N.Y. 2010) ("[V]enue and personal jurisdiction are

threshold procedural issues to be decided before the substantive grounds in a motion to

dismiss.").

## I.     THE COURT LACKS PERSONAL JURISDICTION OVER ZHUHAI FTZ

Plaintiff pleads that this Court's ability to exercise personal jurisdiction over Zhuhai FTZ

is predicated on "its agreement (through its agent TDK Electronics) in Section 11 of the NDA."

Am. Compl. ¶ 27.  That section provides that "all disputes, action, claim, controversies which

may arise between the Parties out of or in connection with the interpretation or performance of

this Agreement shall be exclusively submitted to the United States District Court for the

Southern District of New York . . . and the Parties acknowledge the jurisdiction" of this Court.

NDA § 11.  It is settled law that contracting parties may consent to personal jurisdiction by

executing an enforceable forum-selection clause.  *Burger King Corp. v. Rudzewicz*, 471 U.S.

462, 472 n.14 (1985).

Defendants removed this case on the grounds of diversity of citizenship.  [ECF No. 1].  In

a diversity case, the Court first looks at the basis for personal jurisdiction under the laws of the

forum state, here New York.[6]  *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 168 (2d Cir.

2013).  Then, the Court must determine whether the exercise of personal jurisdiction comports

with Constitutional due process requirements.  *Id.*

The Parties do not dispute that the NDA "is entered between Mersen USA Newburyport-

MA, LLC [and] EPCOS, Inc.," or that the NDA is signed by representatives of those companies.

NDA at 1, 4; Defs. Mem. at 21; *see also* Pl. Opp. at 23-25.  Both Parties also accept that, for

purposes of this case, Mersen USA Newburyport-MA LLC means the Plaintiff, and EPCOS

means TDK Electronics.  *See* Defs. Mem. at 21 (the NDA was between "TDK and Plaintiff"); Pl.

Opp. at 16.  Thus, the Parties do not dispute that Zhuhai FTZ, by the literal terms of the NDA, is

not included as a "Party" for purposes of it.  *See* Pl. Opp. at 16 (arguing Zhuhai FTZ may be

bound as a "non-signatory.").

Instead, Plaintiff argues that Zhuhai FTZ may be haled into court here by virtue of the

NDA on three separate theories: assumption, agency, and under the "closely related" doctrine.

Pl. Opp. at 16, 23.  Because Plaintiff puts forth separate theories, the Court addresses them

---

[6] Both Parties argue that New York law applies to this action.  *See* Defs. Mem. at 20 (citing New York cases); Pl. Opp. at 16 (same).  The NDA also states that it "shall be governed by and construed in accordance with the laws of the state of New York, excluding all conflict of law provisions."  NDA § 11.  The Court, sitting in diversity, applies the laws of New York to this dispute.  *See American Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 133 (2d Cir. 1997) ("[W]here the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry."); *Clarex Ltd. v. Natixis Sec. Am. LLC*, 2013 WL 2631043, at *2 (S.D.N.Y. June 11, 2013) ("Where the parties' briefs assume that New York law controls . . . such implied consent . . . is sufficient to establish choice of law.") (internal quotation marks omitted).

separately, and concludes that Zhuhai FTZ is not bound by the forum selection clause in the NDA under any theory.

### A.     *Zhuhai FTZ is Not Bound to the NDA under an Assumption Theory*

Plaintiff contends that a "'non-signatory' to a contract can 'be held liable if its conduct manifests an intent to be bound by the contract.'"  Pl. Opp. at 16 (quoting *Jennings v. Hunt Companies, Inc.*, 367 F. Supp. 3d 66, 71 (S.D.N.Y. 2019)).  Courts that have found a non-signatory bound to a contract under a theory of assumption have considered, *inter alia*, whether the non-signatory was the "real party in interest" to the contract, whether the non-signatory micromanaged the contract, whether the non-signatory was heavily involved in the negotiation and drafting of the contract, and whether the non-signatory was the "key decision-maker."  *RUS, Inc. v. Bay Indus.*, 2004 WL 1240578, at *21 (S.D.N.Y. May 25, 2004); *ESI, Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35, 73-74 (S.D.N.Y. 1999) (non-signatory may be bound where they "attended meetings . . . and participated in the negotiations and drafting" of the contract).

Mersen points to the December 2016 initial meeting between the Parties in the United States as primary evidence that Zhuhai FTZ "assumed the obligations under the NDA."  Pl. Opp. at 16.  Plaintiffs allege that it was confirmed "[a]t the outset" by a Mersen representative that "all disclosures made at the meeting and afterward would be covered by the NDA," Am. Compl. ¶ 98, and that thereafter Zhuhai FTZ requested information from Mersen, Am. Compl. ¶¶ 93, 95, 99-101, 105.  But it does not follow for purposes of personal jurisdiction that just because Zhuhai FTZ possibly *knew* a non-disclosure agreement existed, that Zhuhai FTZ—a non-signatory— would necessarily *assume* that obligation (including the forum selection clause) simply because of awareness.  Further, Plaintiff does not allege that Zhuhai affirmatively consented or agreed to be bound by the non-disclosure agreement.  *See* Am. Compl. ¶¶ 21, 93 (Mersen pleads

conclusory allegations that Zhuhai FTZ "was aware of, assented to, and understood that it was bound by the NDA" and that it was to be "the primary beneficiary of information.").

Plaintiff proffers the decision in *Impulse Marketing Group Inc. v. National Small Business Alliance*, No. 05-cv-7776 (KMK), 2007 WL 1701813 (S.D.N.Y. June 12, 2007), as "directly on point" to the situation here. Pl. Opp. at 17. The court in *Impulse* held that a "written contract need not be signed to be binding against a party, so long as the party indicates through performance of its terms or other unequivocal acts that it intends to adopt the contract." 2007 WL 1701813, at *6 (S.D.N.Y. June 12, 2007). But, contrary to Plaintiff's position, *Impulse* is readably distinguishable here.

In *Impulse*, the plaintiff IMG, Ing. ("IMG") and defendant National Small Business Alliance ("NSBA") entered into a contract under which IMG would "provide certain online marketing services to NSBA for a fee." *Impulse*, 2007 WL 1701813, at *1. Pursuant to that agreement, IMG received "compensation each time an online user" registered for NSBA products, and received a fee for products bought by users who "responded to IMG-placed advertisements but who did not fully" register. *Id.* at *2. The contract included a New York choice of law and venue provision. *Id.* at *1.

Direct Contact Media ("DCM"), a separate entity and non-signatory to the NSBA-IGM contract, "provided marketing services to NSBA." *Id.* at *1. "IMG submitted invoices for marketing services to NSBA and submitted substantially all of the invoices for [fees owed for unregistered purchases] to DCM." *Id.* at *2. Though NSBA and DCM initially paid IGM for services rendered, they ultimately "ceased making payments on outstanding invoices from IMG." *Id.* Thereafter, IGM sued, asserting, *inter alia*, breach of contract and unjust enrichment against DCM. The *Impulse* court determined that statements by DCM that they were "the real

party in interest" to the contract, coupled with the non-signatory's "micro-manag[agement]" of the contract's performance and payments on behalf of NSBA, lead to the conclusion that there was privity of contract between IGM and DCM, and that DCM therefore had assumed the contract and its forum selection clause. *Id.* at *6.

Unlike in *Impulse*, here Zhuhai FTZ never explicitly expressed that it was the "real party in interest" to the NDA agreement, and its activities with respect to working with Mersen to resolve its issues do not "manifest[] an unequivocal intent to be bound." *RUS, Inc.*, 2004 WL 1240578, at *21. The facts do not reflect, for example, that Zhuhai FTZ micromanaged the contract to which it was not a party. Nor was Zhuhai FTZ a "key decision-maker" in contract negotiations giving rise to the NDA. *Id.*; *ESI, Inc.*, 61 F. Supp. 2d at 73-74; Am. Compl. ¶¶ 87-89 (Mersen "requested an NDA" and "proposed a draft" to TDK Electronics which "left blank the name of the TDK corporate entity that would be a party to the agreement," which was completed by TDK Electronics).

Here, the only contract that Plaintiff purports binds Zhuhai FTZ is the non-disclosure agreement. By its own terms, the NDA between Mersen and TDK Electronics reduced to writing a "commit[ment] to make use of the confidential information solely for the following Authorized Purpose: Design, Manufacture and improvements of MOVs supplied to Mersen." NDA § 1. The contract, therefore, was not an obligation to *assist* in the design, manufacture, and improvement of MOVs, but to *make use* of confidential information solely for that purpose. The NDA does not obligate TDK Electronics—or Zhuhai FTZ—to actually resolve the issues Mersen experienced, instead its obligation was to keep confidential the information provided by Mersen. The facts Plaintiff contends are relevant to its assumption theory do not "hue closer to that of a party that was acting under the obligation of a contract," because they only reflect cooperation by

Zhuhai FTZ in furtherance of the resolution of the TDK-Mersen product issue.  *Impulse*, 2007

WL 1701813, at *6.  To the extent that Zhuhai FTZ, as manufacturer, worked with TDK

Electronics and Mersen to resolve the problem, thereby receiving Mersen information, merely

assisting in the administration of a contract cannot bind a non-party to it.  *Cf. Bristol-Myers*

*Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017)

(holding a "defendant's relationship with a . . . third party, standing alone, is an insufficient basis

for jurisdiction"); *see also Mellencamp v. Riva Music Ltd.*, 698 F. Supp. 1154, 1160

(S.D.N.Y.1988); *Impulse*, 2007 WL 1701813, at *6.

Plaintiff's assumption theory is also deficient because it would contradict the plain

language of the NDA.  In New York, contract provisions must be given their plain and ordinary

meaning, and the interpretation of those provisions is a question of law.  *See White v.*

*Continental Cas. Co.*, 848 N.E.2d 1019, 9 N.Y.3d 264, 267 (2007); *See HOP Energy, LLC v.*

*Loc. 553 Pension Fund*, 678 F.3d 158, 162 (2d Cir. 2012) ("Under New York law, a court must

give full effect to unambiguous contract terms.").  The NDA expressly states that TDK

Electronics "shall bear all liabilities arising out of any breach of duty by any third party or

Affiliate towards Mersen."  NDA § 3.4.  Thus, to the extent that Zhuhai FTZ could be liable for

any breach of the NDA, such liability would appear to be contractually borne by TDK

Electronics.[7]

---

[7] Further, Section 10.1 of the NDA also articulates that "[t]his Agreement embodies the entire understanding between the Parties with respect to the subject matter of this Agreement" and it may "only be modified in writing signed and dated by both Parties."  Similarly, the NDA prohibited any party to it from "assign[ing] or transfer[ring] any of its rights or obligations under this Agreement without the prior written consent of the other Party," and any transfer "occurring by virtue of the purported operation of law, shall be void."  NDA § 10.4.  According to the plain language of the NDA, modifying the contract under an assumption theory to impose obligations on Zhuhai FTZ appears specious where modifications must be made in writing.

The Court cannot conclude, therefore, that Zhuhai FTZ has assumed the NDA, nor submitted to the personal jurisdiction of this Court.  Accordingly, no claim should lie here against Zhuhai FTZ on an assumption theory.  *See Crabtree v. Tristar Auto. Group, Inc.*, 776 F.Supp. 155, 166 (S.D.N.Y.1991) ("It is hornbook law that a non-signatory to a contract cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract.").

**B.**      ***Zhuhai FTZ is Not Bound to the NDA under an Agency Theory***

Under Second Circuit authority, "traditional principles of agency law may bind a non-signatory to an arbitration agreement."  *Thomson-CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 778 (2d Cir. 1995).  Plaintiff contends that "[a]lthough this principle is commonly applied in the arbitration context, it should apply equally to other agreements."  Pl. Opp. at 19 n.23.

Agency involves a relationship where "the agent acts subject to the principal's direction and control."  *Shulman Transport Enterprises, Inc. v. Pan American World Airways, Inc.*, 744 F.2d 293, 295 (2d Cir. 1984).  Plaintiffs beseech the Court to consider as evidence that TDK Electronics was the agent of Zhuhai FTZ that, during the course of their interactions, Zhuhai FTZ set an agenda for a meeting, "determined what information to request," and was the "only entity that could solve the technical problems [and] use the information."  Pl. Opp. at 19; *see* Am. Compl. ¶¶ 16, 18, 28.  Those allegations even accepted as true, however, do not create or support a principal-agent relationship because they do not give rise to a plausible inference that TDK Electronics intended to accept a role as agent, that Zhuhai FTZ expected that TDK Electronics would act on its behalf, or that Zhuhai FTZ ever allowed TDK Electronics to act on its behalf.  *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 458 (S.D.N.Y. 2010) ("To demonstrate a principal-agent relationship, Plaintiffs must allege facts sufficient to support: (1) a

manifestation by the principal that the agent shall act for him; (2) acceptance of the undertaking by the agent; and (3) an understanding between the parties that the principal is to be in control of the undertaking.") (internal citations omitted); *Time Warner City Cable v. Adelphi Univ.*, 27 A.D.3d 551, 552, 813 N.Y.S.2d 114, 116 (2d Dep't 2006) (agency requires the "consent of one person to allow another to act on his or her behalf and subject to his or her control, and consent by the other so to act.").   At best, the allegations reflect that Zhuhai FTZ worked with Mersen to resolve the TPMOV issue, but not that TDK Electronics was acting "subject to" Zhuhai FTZ's "direction and control."  Zhuhai FTZ therefore is not bound to the forum selection clause in the NDA under an agency theory, and has not consented to personal jurisdiction on that ground.

## C.     Zhuhai FTZ is Not Bound to the NDA under the "Closely Related" Doctrine

The "closely related" doctrine "hold[s] that a non-signatory to a contract containing a forum selection clause may enforce the forum selection clause against a signatory when the non-signatory is 'closely related' to another signatory."  *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 723 (2d Cir. 2013) (citation omitted).  This test generally requires it to be foreseeable that the non-signatory would seek to enforce the forum selection clause against the party resisting enforcement.  *See id.*

Plaintiff urges the Court to adopt an inverse theory here: that Plaintiff, a signatory, can invoke the NDA's forum selection to force Zhuhai FTZ, a non-signatory, to defend against Plaintiff's claims in this Court.  Pl. Opp. at 24.  Some courts have endorsed such a theory.  *See, e.g.*, *Prospect Funding Holdings v. Vinson*, 256 F. Supp. 3d 318, 325 (S.D.N.Y. 2017).  More recent cases have criticized the approach for running afoul of constitutional principles of due process.  *See, e.g.¸ Arcadia Biosciences, Inc. v. Vilmorin & Cie*, 356 F. Supp. 3d 379 (S.D.N.Y. 2019); Defs. Mem. at 21 n.30 (collecting cases).  This Court agrees that constitutional concerns prohibit the application of the "closely related" doctrine in this case.

19

"The rules governing personal jurisdiction . . . are driven by constitutional concerns over 'the court's power to exercise control over the parties.'" *Arcadia*, 356 F. Supp. at 394 (quoting *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979)).  Where a plaintiff seeks to bring suit against a foreign defendant, he must show that the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  As a result, a court is without personal jurisdiction over a defendant unless "the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

Save the forum selection clause, this matter has nothing to do with New York.  Mersen is an Ohio corporation with a principal place of business in Massachussets.  Am. Compl. ¶ 31.  TDK Electronics is a Delaware corporation with a principal place of business in New Jersey.  Am. Compl. ¶ 32.  Zhuhai FTZ is "a company based in Zhuhai City, China."  Am. Compl. ¶ 36.  Zhuhai FTZ's contacts with the United States are limited to its interactions with TDK Electronics as its manufacturer, Am. Compl. ¶ 30, and meetings held in Massachusetts with Mersen, Am. Compl. ¶ 17.  Besides that, Mersen had contact with Zhuhai FTZ only when it visited its facility in China.  Am. Compl. ¶ 105.  Because Plaintiff does not contend that Zhuhai FTZ has *any* contacts with New York, Zhuhai FTZ has not "purposefully avail[ed] itself of the privilege of conducting activities" here.  *Hanson*, 357 U.S. at 253.  Thus, the "closely related" doctrine cannot save Plaintiff's claims against Zhuhai FTZ because personal jurisdiction on that basis would not comport with due process.

*     *     *

Because the Court concludes that Zhuhai FTZ has not consented to personal jurisdiction, the Court is without authority to adjudicate the claims against it. Zhuhai FTZ's Motion to Dismiss for lack of personal jurisdiction is therefore granted.

## II.   PLAINTIFF'S BREACH OF CONTRACT CLAIM AGAINST TDK ELECTRONICS STATES A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Under New York law, the elements of a breach of contract claim are 1) the existence of a contract, 2) performance by the party seeking recovery, 3) breach by the other party, and 4) damages suffered as a result of the breach. *See Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011).

Plaintiff contends that TDK Electronics breached its obligations under the NDA because TDK Electronics "misused the information provided under the NDA by participating and facilitating [Zhuhai FTZ's] development and manufacturing of the MT30 products and competing against Mersen for business opportunities confidentially disclosed [] under the NDA." Am. Compl. ¶ 145. Specifically, Plaintiff alleges that TDK Electronics misused its confidential specifications and elements in the "development and manufacturing of the MT30 products." Am. Compl. ¶ 145. TDK Electronics argues that Plaintiff's allegations do not make out a breach of the NDA because they do not adequately allege "(i) that the information purportedly disclosed was actually covered by the NDA, failing to identify the allegedly confidential information with specificity; or (ii) that Defendants misused any such confidential information in developing the MT30." Defs. Mem. at 8-9. Construing the facts in the light most favorable to Plaintiff, the Court disagrees.

The product issues Mersen experienced with Zhuhai FTZ and TDK Electronic's MOV product were the catalyst for the NDA between the Parties. Am. Compl. ¶¶ 5-7. To diagnose the

issue, Mersen iteratively disclosed information relating to its "Confidential 25mm Business Plan." Am. Compl. ¶¶ 63-65, 110-11, 119-20, 145.  Plaintiff certainly identifies "the allegedly confidential information" that it disclosed during that process:

> design details of product components, exact materials and their composition; the identities of its other vendors; critical characteristics for each component and the overall design; key design features of its TPMOV; information relating to the processes Mersen used to make its TPMOV, including how to integrate the TDK MOV into the Mersen TPMOV

Am. Compl. ¶ 67.  And Plaintiff alleges that, pursuant to the NDA, it specifically disclosed "two central elements of its TPMOV product/design," and alleges specifically (albeit under seal) what those central elements are; certain specifications and its TPMOV's particular, confidential "solder type and solder temperature."  Am. Compl. ¶¶ 69-70.  Mersen then pleads that the MT30 product "takes advantage of Mersen's Confidential Technical Information including the [confidential elements] and [the solder type and temperature]" because the MT30 product "incorporates" that information.  Am. Compl. ¶¶ 116, 118-19, 123, 124.  Accepting those allegations as true, as the Court is required to do at this stage, those facts permit the Court to draw the plausible inference that the MT30 product inappropriately uses the "key design features" that TDK Electronics was aware of as a result of the NDA disclosures.

TDK Electronics suggests that this case is similar to a recent decision in *Exceed Holdings LLC v. Chicago Board Options Exchange Inc.*  Defs. Mem. at 12-13; Reply at 3 n.7, 4 n.4.  The Court agrees that the case is informative, but its conclusion is inapposite here.  In *Exceed*, the plaintiff and defendant entered into a non-disclosure agreement so that the defendant could "learn more about [plaintiff] to inform a potential investment."  2018 WL 4757961, at *1 (S.D.N.Y. Sept. 30, 2018).  After signing the NDA, the plaintiff disclosed information relating to "its internal, proprietary information, including plans for future structured note products."  *Id.* Later, the defendant announced that it would invest in a third-party competitor.  The plaintiff

sued the defendant for breach of the NDA, alleging that the third-party competitor's note products had a suspiciously similar structure. *Id.* at *2. The *Exceed* court dismissed the breach of contract claim because it held that the plaintiff had not "plausibly alleged that [the defendant] disclosed any proprietary information to" the competitor. *Id.* at *5. In particular, the court found crucial that "other than the identifying information [plaintiff] shared with [the defendant] pursuant to the NDA, [plaintiff] does not identify what proprietary information was used by [the competitor] and precisely *how* [the competitor's] products were similar." *Id.* (emphasis in original).

Here, Plaintiff explicitly states that it disclosed its confidential information (details of which are alleged under seal) directly to TDK Electronics, Am. Compl. ¶¶ 116-17, and that those features are incorporated in its MT30 product. Am. Compl. ¶¶ 116, 119, 123. Thus, unlike the allegations the *Exceed* court found insufficient, Plaintiff identifies both the information it disclosed pursuant to the NDA and "*how* the [MT30] product[ is] similar" to Mersen's TPMOV. *Exceed*, 2018 WL 4757961 at *5 (emphasis in original). On this motion, that is sufficient to state a claim upon which relief can be granted. *See Next Commc'ns v. Viber Media*, No. 14-cv-8190 (RJS), 2016 WL 1275659, at *7 (S.D.N.Y. Mar. 30, 2016) ("On a motion to dismiss, the Court must accept as true Plaintiffs' allegation that Defendant 'shar[ed] the Proprietary Information[,'] and it cannot answer the factual question of whether the [at-issue] idea was 'Proprietary Information' as that term is defined under the NDA.").

TDK Electronics then suggests that Plaintiff's breach of contract claim must fail because the alleged confidential information is "ascertainable from Mersen's public product specifications," or "capable of discovery through reverse engineering." Reply at 2-3; Defs. Mem. at 11, 13. TDK Electronics points to public specifications it has put on the record in an

23

affidavit in support of its motion to dismiss.  [ECF No. 50-1] (attaching a copy of "publicly available specifications for [TMPOV] products published on the website of Mersen USA EP Corp.").  On a motion to dismiss, the Court must accept the allegations of the complaint as true *McCarthy*, 482 F.3d at 191, and its review is limited to those allegations and any documents specifically incorporated by reference in or integral to the complaint.  *DiFolco*, 622 F.3d at 110-11.  To the extent that the Court could properly consider on this motion the information to which TDK Electronics refers, doing so does not move the needle in Defendant's favor.  TDK Electronics contends that because the specifications include some information of the same type as Plaintiff contends is protected by the NDA," Plaintiff "fails to identify specifically what aspects of the [information] remain[s] confidential."  Defs. Mem. at 12.  But a review of the specifications does not reveal that Mersen's TPMOV specifications disclose the information it alleges is confidential and subject to the Non-Disclosure Agreement.  *See* Am. Compl. ¶ 69.  TDK Electronics concedes as much in its Reply.  *See* Reply at 2-3 ("Indeed, while [the confidential information] is, by itself, not listed in Plaintiff's public specifications, it is easily ascertainable from Mersen's public product specifications.").  To the extent that the information included in the specification could lead to the development of a similar product, such an argument is a substantive defense to Plaintiff's claim that the Court will not resolve on a motion to dismiss at the pleading stage.  *See Next Commc'ns*, 2016 WL 1275659, at *7 (rejecting argument that because the claimed information "was available in the public applications for patents," it was not confidential because such an argument "is essentially an affirmative defense [] inappropriate on a motion to dismiss"); *see also Mabry v. Neighborhood Defender Serv.*, 769 F. Supp. 2d 381, 395 (S.D.N.Y. 2011) ("A court may dismiss a claim on the basis of an affirmative defense raised in the motion to dismiss, only if the facts supporting the defense

appear on the face of the complaint, and it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.") (internal quotation marks omitted).  Plaintiff's breach of contract claim therefore states a claim upon which relief can be granted, and Defendant TDK Electronic's motion to dismiss on that ground is denied.

## III.  PLAINTIFF'S UNFAIR COMPETITION CLAIM AGAINST TDK ELECTRONICS IS DUPLICATIVE OF ITS CONTRACT CLAIM

If an unfair competition claim is "based entirely on the same alleged conduct proscribed by contract . . . the unfair competition claim [must be] dismissed as duplicative of [a] breach claim." *Bytemark, Inc. v. Xerox Corp.*, 342 F. Supp. 3d 496, 508 (S.D.N.Y. 2018); *Bancorp Servs., LLC v. Am. Gen. Life Ins. Co.*, 2016 WL 4916969, at *9 (S.D.N.Y. Feb. 11, 2016) (unfair competition claim dismissed where it was "entirely based on alleged conduct that is proscribed by the 2010 NDA — namely disclosure and use of information that was protected by the 2010 NDA" and plaintiffs had not alleged that defendant "had any duty to them independent of the 2010 NDA, nor . . . alleged circumstances extraneous to that contract in support of their non-contract claims").  A defendant "may [] breach an independent duty in tort," for purposes of an unfair competition claim, "if the defendant goes beyond a mere breach of the contract and acts in such a way that a trier of fact could infer that it willfully intended to harm the plaintiff." *Carvel Corp. v. Noonan*, 350 F.3d 6, 16 (2d Cir. 2003).

Plaintiff contends that confidential information allowed TDK Electronics to "obtain[] access to Mersen's business information" and, following Mersen rejection of future business with TDK Electronics, let them "target[] the exact customers Mersen disclosed[] with a product that misused Mersen's Confidential Technical Information."  Am. Compl. ¶¶ 164-65.  Mersen pleads that "[u]pon information and belief," TDK Electronics therefore "willfully and in bad faith ignored the confidentiality obligations they owed to Mersen."  Am. Compl. ¶ 166.

Plaintiff's unfair competition claim is entirely derivative of its breach of contract claim. *See* Am. Compl. ¶ 166 ("Defendants [could] jump start their entry into the new TPMOV market . . . by targeting the exact customers Mersen disclosed to Defendants with a product that misused Mersen's Confidential Technical Information."); *see also* NDA § 3.3 (TDK Electronics was prohibited from using "the Confidential Information for any purpose other than the [design manufacture and improvement of MOVs supplied to Mersen].").  The Court need not credit Plaintiff's conclusory contention (*see* Am. Compl. ¶¶ 165-66) that any confidentiality obligations TDK Electronics ignored were "willful[] and in bad faith."  *Twombly*, 550 U.S. at 557 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  This action is, in its entirety, grounded in the allegation that TDK Electronics breached its obligations under the NDA.  The Court therefore dismisses the unfair competition claim as duplicative of that claim.  *Carvel Corp.*, 350 F.3d at 16 ("Where the plaintiff and defendant are parties to a contract, and the plaintiff seeks to hold the defendant liable in tort, the plaintiff must prove that the defendant breached a duty 'independent' of its duties under the contract; otherwise plaintiff is limited to an action in contract."); *Opternative, Inc. v. JAND, Inc.*, 2018 U.S. Dist. LEXIS 132827, at *25, 2018 WL 3747171 (S.D.N.Y. Aug. 7, 2018).

## CONCLUSION

For the reasons stated herein, Defendant TDK Electronic and Zhuhai FTZ's Motion to Dismiss is GRANTED IN PART.  Because the Court does not have personal jurisdiction over Defendant Zhuhai FTZ, the claims asserted against it are DISMISSED WITHOUT PREJUDICE. Defendant TDK Electronics' Motion to Dismiss with respect to Plaintiff's breach of contract claim (Count One) is DENIED, but with respect to the unfair competition claim asserted against

Defendant TDK Electronics, the motion is GRANTED.  The unfair competition claim (Count Three) is DISMISSED as duplicative of the well-plead breach of contract claim.

The Clerk of the Court respectfully is requested to terminate the motions at ECF Nos. 29 and 44, terminate the case without prejudice against Defendant TDK (Zhuhai FTZ) Co., Ltd., and dismiss Count Three against Defendant TDK Electronics.  TDK Electronics shall file its answer on or before April 12, 2022.

**SO ORDERED.**

**Date:   March 28, 2022**
**        New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**